## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAMAINE GRISSOM,                          :
                                          :      Civil Action No. 10-1468 (CCC)
                    Petitioner,           :
                                          :
              v.                          :      **OPINION**
                                          :
DONALD MEE, et al.,                       :
                                          :
                    Respondents.          :


**APPEARANCES:**

     JAMAINE GRISSOM, Petitioner <u>pro se</u>
     #416430/383186C
     East Jersey State Prison
     Lock Bag R
     Rahway, New Jersey 07065

     BARBARA A. ROSENKRANS, ACTING ASSISTANT PROSECUTOR
     ESSEX COUNTY PROSECUTOR'S OFFICE
     Essex County Courts Building, 50 West Market Street
     Newark, New Jersey 07102
     Counsel for Respondents

**CECCHI,** District Judge

    This matter is before the court pursuant to a petition for a writ of habeas corpus under 28 U.S.C. § 2254, filed by petitioner Jamaine Grissom, challenging his 2001 New Jersey state court conviction. For the reasons stated below, this Court will deny the habeas petition for lack of merit.

I.   PROCEDURAL BACKGROUND

Petitioner, Jamaine Grissom ("Grissom"), was indicted by a Essex County grand jury on April 20, 1995, on charges of second degree conspiracy to commit murder, in violation of N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3a; murder contrary to N.J.S.A. 2C:11-3a; third degree possession of a handgun without the requisite permit, in violation of N.J.S.A. 2C:39-5b; and second degree possession of a handgun with the purpose of using it unlawfully against another, in violation of N.J.S.A. 2C:39-4a.  Grissom initially was tried before the Honorable R. Benjamin Cohen, J.S.C. and a jury in January 1996, and on January 26, 1996, Grissom was found guilty on all charges in the indictment.  Judge Cohen sentenced Grissom on February 15, 1996, to an aggregate term of 30 years imprisonment with a 30-year parole disqualifier.

Grissom filed a direct appeal from his conviction and sentence before the Superior Court of New Jersey, Appellate Division.  On January 12, 1998, the Appellate Division reversed Grissom's convictions on the murder and conspiracy to commit murder counts, and the remaining convictions were affirmed.

In October and November 2000, a second trial was held before the Honorable Paul J. Vichness, J.S.C. and a jury, on the murder and conspiracy to commit murder charges.  On November 3, 2000, Grissom was found guilty on both counts.  On January 12, 2001, Judge Vichness sentenced Grissom to 30 years imprisonment with

2

30 years of parole ineligibility on the murder conviction.  The conspiracy to commit murder count was merged with the murder count.

On May 17, 2001, Grissom filed a direct appeal before the Superior Court of New Jersey, Appellate Division.  On October 7, 2002, the Appellate Division affirmed both the convictions and sentence.  The Supreme Court of New Jersey denied certification on December 12, 2002.

Grissom alleges that he first filed a petition for post conviction relief ("PCR") with the Essex County Superior Court on April 5, 2003.  The state court then issued an order on May 2, 2003, directing that the Office of the Public Defender represent Grissom in his state PCR proceedings.  The public defender withdrew as counsel for petitioner on March 15, 2005, pursuant to a substitution of attorney filed by counsel retained by Grissom's mother.  On June 15, 2006, the state PCR petition was dismissed by the court because no brief in support of the petition had been filed despite numerous court reminders and deadlines.  Grissom terminated counsel's representation on July 12, 2006.

On August 16, 2006, Grissom filed another PCR petition, asserting claims of ineffective assistance of trial and appellate counsel and prosecutorial misconduct.  Judge Vichness denied post-conviction relief on May 23, 2007.  On August 24, 2007, Grissom filed a notice of appeal before the Appellate Division,

3

challenging the order denying his state PCR petition.  On
February 5, 2009, the Appellate Division affirmed the trial
court's denial of post-conviction relief.  The Supreme Court of
New Jersey denied certification on January 28, 2010.

Grissom filed this § 2254 habeas petition on March 18,
2010.[1]  The respondents filed an answer to the habeas petition on
or about April 12, 2011, together with the relevant state court
record.  (Docket entry no. 18).  Grissom filed a reply or
traverse to the State's answer on May 5, 2011.  (Docket entry no.
19).  He filed further letters and/or addendums in support of his
habeas petition on June 1, 2011, June 6, 2011, June 13, 2011 and
June 30, 2011.  (Docket entry nos. 22, 23, 25, 26, 27, 28 and
29).

---

[1]  Pursuant to the "prison mailbox rule," a habeas petition
is deemed filed on the date the prisoner delivers it to prison
officials for mailing, not on the date the petition is ultimately
filed with the court.  See Houston v. Lack, 487 U.S. 266, 270-71
(1988); see also Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir.
1988) (applying prison mailbox rule set forth in Houston, which
dealt with filing of an appeal, to a pro se prisoner's filing of
a habeas petition).  Although the Court is unable to determine
the exact date that Grissom handed his petition to prison
officials for mailing, Grissom signed his habeas petition on
March 18, 2010.  See Henderson v. Frank, 155 F.3d 159, 163-64 (3d
Cir. 1988) (using date prisoner signed petition as date he handed
it to prison officials for purposes of calculating timeliness of
habeas petition).  Accordingly, the Court finds that March 18,
2010 was the date this petition was filed for purposes of
calculating the timeliness of the petition, and not the date the
petition was received by the Clerk of the Court on March 22,
2010.

II.  <u>FACTUAL BACKGROUND</u>

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, <u>see</u> 28 U.S.C. § 2254(e)(1), will simply reproduce the factual recitation as set forth in the unpublished opinion of the Superior Court of New Jersey, Appellate Division, decided on October 7, 2002, with respect to petitioner's direct appeal from his judgment of conviction and sentence rendered on retrial:

> The following facts were summarized in an unpublished opinion, <u>State v. Grissom</u>, No. 4810-95 (App. Div. January 12, 1998).  Except for the State reading defendant's testimony into the record at the second trial, the testimony mirrored the first trial and the factual rendition previously summarized can be repeated here.
>
> The convictions arose from the January 3, 1995 murder of Donny Ledbetter, the boyfriend of defendant's former girlfriend.  It was the State's contention that defendant committed the murder either as a principal or as an accomplice of codefendant Kip Washington.[2]  The jury verdict does not identify which theory formed the basis for the verdict.
>
> The convictions were premised upon the following evidence.  Vonetta Wallace had dated defendant for four and one-half years, breaking up with him in August 1994 to date the victim, Donny Ledbetter.  According to Wayne Hakeem Jackson, Ledbetter's cousin, one afternoon in September 1994, while Jackson was at Ledbetter's house, defendant came to the house and started arguing about Vonetta Wallace.  In a "threatening" demeanor, defendant told Ledbetter that the next time he came "he wasn't going to talk...."  Defendant came alone, did not have a weapon and did not engage in a physical fight with Ledbetter.  Jackson acknowledged that

_____

[2]  Tried separately and after defendant's convictions, codefendant Washington was acquitted.

5

Ledbetter owned a handgun for home protection and identified the gun found lying beside Ledbetter's body at the scene of his murder as Ledbetter's gun.

Vonetta Wallace told the jury that about a month and a half prior to the murder, she had a heated confrontation with defendant over her relationship with Ledbetter.  On the day of the murder, defendant came to her house around 7:00 a.m., wearing a green goose down coat with black patches.  He confronted her about Ledbetter's presence in her house the previous evening.  She testified that defendant became angry and said he was going home to be with his father, who had died a few months earlier.  She understood this to mean that defendant intended to commit suicide.  A short time later, he returned, leaving a note on the windshield of her car which said "I hate you and you're to blame for what happened."  He also drove up to the side of her car when she got into it, telling her that he was going home to be with his father and he was going to take her boyfriend too, the implication, of course, being that he intended to kill Ledbetter.  On cross-examination, however, Wallace conceded that she first made this statement to police one week before trial.  In contrast, her statement to the police on the day after the murder, she told them that defendant said he was going home to be with his father and she could be with her boyfriend.

Another State's witness, Jennifer Ba[y]ley, testified that she was walking to work on January 3, 1995, when she saw a small white car with two occupants.  The driver was wearing a shiny green jacket and a black knit cap.  The passenger was wearing a camouflage jacket and a black knit hat.  It was the passenger who got out of the car, crossed in front of her and rang the doorbell at 182 Lincoln Place, Ledbetter's home.  Moments later, she heard a voice say "fire" and then heard four gunshots.  She ran to the corner and glanced back at a forty-five degree angle, observing a side view of the passenger's face "for about a second and a half" as he ran back to the car.  About a month and a half later, she identified defendant's photograph from a photo array as the "shooter" she saw at 182 Lincoln Place.  But, she also identified a green shiny jacket as the jacket the driver wore, not the shooter.  That jacket was found in defendant's possession during a later search of his premises.

....

6

Around 5:00 p.m. that same day, Jackson, Ledbetter's cousin, testified that he went to Wallace's house to ask her what had happened to Ledbetter. Although it was dark, he saw an unidentified man standing by a black car, wearing a green camouflage jacket and a black knit hat with a brim on it. Defendant sat in the passenger side of the car and wore a white or beige goose down jacket with patches on the shoulders.

Shortly thereafter, Wallace went to the defendant's mother's house to speak with her about defendant. During the visit, they discovered that defendant had shot himself and called 911. A gun was found by the EMT unit that responded lying near defendant. It was later determined that that gun, a .38 caliber Colt revolver, was the same gun that killed Ledbetter.

A .38 caliber Rome revolver, however, was found at the scene of Ledbetter's murder, next to his body. A spent projectile lying in the grass in front of the house and two bullet holes (one in the aluminum siding and one in a window frame) in the north side of the house at 184 Lincoln Place, were found along with a bullet hole with an embedded round in the front porch to the left of Ledbetter's head. Three spent rounds were also found, one from the grass, one from the window frame next door at 184 Lincoln Place and one from Ledbetter's body. Ledbetter's revolver, the .38 caliber Rome, contained three live rounds and one spent casing. While an empty shell casing from the gun was also found, it could not be determined when the bullet had been fired.

The bullet that killed Ledbetter came from the Colt revolver that defendant used to shoot himself. On the other hand, while the bullets found on the ground at 182 Lincoln Place and in the window frame at 184 Lincoln Place had the general characteristics of a Colt revolver, the State's ballistic expert could not make a conclusive determination that they had been fired from the gun found at defendant's premises. He concluded, however, that the bullet removed from Ledbetter and those found on the ground at the scene could not have come from Ledbetter's .38 caliber Rome revolver.

About a week after the shooting, the police searched defendant's room. Among other items, they seized a green jacket (later identified as the jacket worn by the driver), a black knit hat, title to a silver 1985 Dodge Omni (later identified as the car seen by the eyewitnesses). On the same day, the police interviewed defendant in the hospital.

They read him his Miranda[3] rights and placed him under arrest.  When asked about his injuries, defendant responded that he had shot himself in the head at home with a gun given to him by a "friend" whose name he did not know.  He initially denied knowing Ledbetter, did not have any involvement in his homicide, and did not have any contact with Vonetta Wallace on January 3, 1995.  He later admitted that he went to Wallace's house the morning of January 3 and argued with her about Ledbetter.  He further admitted going to Ledbetter's house and said that when he drove up to it, he saw three to four black males standing in front of it. One of these men fired at Ledbetter, who fell on the porch, and they then ran away.  Upon further questioning, defendant then stated that one of the males got into the passenger side of defendant's car and handed him a gun.  Defendant said he drove away but could not remember where he drove.

At trial, defendant admitted that he talked to Wallace about Ledbetter and that, although he did not have a problem with Wallace dating Ledbetter, he wanted her to choose between the two of them.  He also admitted that he went to see Ledbetter at 182 Lincoln Place in September 1994 to discuss Ledbetter's relationship with Wallace.  At the end of the conversation, Ledbetter told defendant to "get the fuck out of here."  He admitted telling Ledbetter at that time that the next time he came back, he was not coming just to talk. But he did so only to appear macho.

On the morning of January 3, defendant testified that he dressed for work and drove a co-worker to work, but once he arrived he decided to take the day off.  He admitted to seeing Wallace that morning and telling her that he was going home to be with his father.  Although depressed over his father's and stepfather's then recent deaths, he denied intending to commit suicide.

Defendant told the jury that he was friends with a Kip Washington (later indicted as a codefendant for the murder of Ledbetter), who lived across the street, and that he had called Kip around 9:00a.m. on January 3.  After picking Washington up, they drove around discussing defendant's frustration with Wallace.

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Washington was wearing a camouflage jacket, a black hat and jeans.  According to defendant, Washington volunteered to speak with Ledbetter about Wallace.  They drove to Ledbetter's around 9:20 a.m.  Washington went to the house, while defendant stayed in the car.  Defendant remembered seeing Jennifer Ba[y]ley and then hearing three to four shots, after which Washington ran to the car and got in. Defendant did not see a gun.  Washington told him that he shot Ledbetter after Ledbetter pulled a gun on him.

Defendant dropped Washington off in Westside park, drove home and saw a gun on the passenger side of the armrest in the car.  He took the gun downstairs to his room in the basement.  He testified that he was aware that the gun had been used in a shooting and was frustrated and frightened about it, but did not call the police.  He claimed that while holding the gun and looking at it, he shot himself accidentally.  He denied shooting Ledbetter and denied entering into any agreement with Washington to shoot Ledbetter.

(Respondents' Exhibit 7, October 7, 2002 Appellate Division Opinion at pp. 2-6, Docket entry no. 18-9).

### III.   <u>STANDARD OF REVIEW</u>

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).  Thus, because Grissom is proceeding as a <u>pro se</u> litigant in this matter, the Court will accord his habeas

petition the liberal construction intended for pro se petitioners.

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law. 28 U.S.C. § 2254(a). The Anti-Terrorism and Effective Death Penalty Act (AEDPA) limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits.[4] In such cases, the writ must be denied unless the state court's adjudication of the claim (1) involved an unreasonable application of clearly established Federal law, (2) was contrary

---

[4] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See Rompilla, 355 F.3d at 247. See also Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)(even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference)). On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply." Rolan, 445 F.3d at 678. See also Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000)(with respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).

to clearly established Federal law, or (3) was based on an unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d).

"Clearly established" federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 412 (2000).  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A state court decision is "contrary to" clearly established federal law under § 2254(d)(1), where it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005); see also Williams, 529 U.S. at 405-06.  Under the "unreasonable application" clause of § 2254(d)(1), "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case."  Rompilla v. Beard, 545 U.S. 374, 380 (2005)(quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). See also Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011).

11

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer v. Andrade, 538 U.S. at 75-76. "Rather, '[t]he state court's application of clearly established law must be objectively unreasonable' before a federal court may grant the writ." Rountree, 640 F.3d at 537 (quoting Lockyer v. Andrade, 538 U.S. at 75). In essence, the AEDPA "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, --- U.S. ----, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)(quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Pursuant to § 2254(d)(2), an "unreasonable determination of facts" occurs where "the petitioner has demonstrated by clear and convincing evidence that the state court's determination of the facts was unreasonable in light of the record." Roundtree, 640 F.3d at 537-38 (internal quotations omitted). See § 2254(e)(1); Rice v. Collins, 546 U.S. 333, 338-39 (2006). Reasonableness is measured by looking to the record of the evidence at the time of the state court's adjudication. Roundtree, 640 F.3d at 538 (citing Cullen v. Pinholster, ____ U.S. ____, 131 S.Ct. 1388, 1401-03, 179 L.Ed.2d 557 (2011)).

Finally, this Court emphasizes that "[i]n conducting habeas review, a federal court is limited to deciding whether a

12

conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982).  Generally, "[i]f a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable," Engle v. Isaac, 456 U.S. 107, 120 n. 19 (1982), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.  That is, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). In addition, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

IV.  <u>STATEMENT OF CLAIMS</u>

Grissom raises the following grounds for relief in his habeas petition:

Ground One: Ineffective assistance of trial counsel in failing to object to jury instructions and verdict sheet as to the sequence of determining guilt on murder and passion/provocation manslaughter.  Counsel also ineffective for failing to object to admission of handgun at retrial.

Ground Two: Trial court denied Petitioner access to confession of co-defendant and its favorable use at trial.

Ground Three: Prosecutorial misconduct.

Ground Four: Failure to give lesser included offenses for conspiracy charge when there was no direct or even strong circumstantial evidence of a conspiracy to commit murder. Further, the conspiracy count should have been dismissed because Petitioner's co-defendant was acquitted of all charges, and it is not feasible for Petitioner to have conspired alone.

Ground Five: Trial counsel ineffective for failing to argue a defense of mental defect or severe emotional distress.

Ground Six: Cumulative errors committed by both trial and appellate counsel rendering their assistance ineffective.

Grissom states that he raised all of these claims on direct appeal and in his state PCR proceedings.

The State responds that the habeas petition should be denied for lack of merit and/or because it fails to state a claim for which federal habeas relief may be granted.   Additionally, the State argues that Grissom has procedurally defaulted on his claims of prosecutorial misconduct and trial counsel's failure to investigate or develop a diminished capacity defense.   Further, the State contends that Petitioner failed to exhaust his claim concerning the trial court's denial of Grissom's access to the alleged confession by co-defendant.[5]

Finally, the State argues that this petition should be dismissed as untimely filed.   This Court has carefully reviewed the state court record and Grissom's reply to the State's answer, and finds that the petition is not time-barred.   The State correctly states that the one-year statutory limit began to run on or about March 14, 2003.   Consequently, Grissom had one year from this date, or until March 14, 2004, to file his federal habeas petition.   See 28 U.S.C. 2244(d)(1)(A).[6]   This statutory

---

[5]   This Court notes that it may deny this habeas petition on the merits notwithstanding the purported failure of Grissom to fully exhaust all of his claims on state court review.   28 U.S.C. § 2254(b)(2).

[6]   Section 2244(d)(1)(A) reads as follows:
(1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of—

        (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; ...

15

limitation may be tolled during the time a properly filed
application for state post-conviction relief is pending.  28
U.S.C. § 2244(d)(2).[7]  The State contends that Grissom filed his
state PCR petition on August 16, 2006, well beyond the March 14,
2004 deadline, and thus statutory tolling under 28 U.S.C. §
2244(d)(2) did not occur, making Grissom's § 2254 habeas petition
filed on March 18, 2010 untimely.

This Court finds that the habeas petition is not time-
barred.  Grissom states that he first filed his state PCR
petition on April 5, 2003, only 22 days after his one-year
limitations period began to run on March 14, 2003.  Grissom
relates issues concerning his PCR counsel, namely, that counsel
failed to file any brief on his behalf in support of his PCR
petition.  Although his first state PCR petition was dismissed on
June 15, 2006, due to counsel's failure to file a brief in
support of the petition despite numerous court reminders and
deadlines, Grissom immediately retained other counsel who
promptly filed a state PCR petition on August 16, 2006, asserting
claims of ineffective assistance of trial and appellate counsel
and prosecutorial misconduct.  Consequently, another 60 days had

---

[7]  Section 2244(d)(2) provides:

(2) The time during which a properly filed application for
State post-conviction or other collateral review with
respect to the pertinent judgment or claim is pending shall
not be counted toward any period of limitation under this
section.

run on the limitations period before it was again tolled on August 16, 2006. Grissom's state PCR petition was denied on May 23, 2007, and Grissom appealed. The Appellate Division affirmed the order denying his state PCR petition on February 5, 2009. The Supreme Court of New Jersey denied certification on January 28, 2010. At this point, tolling of the one-year statutory period stopped and Grissom had 283 days remaining (365 days minus 82 days = 283 days) on his limitations period within which to file his habeas petition. He filed this habeas petition on March 18, 2010, well within that time frame, thus making this habeas petition timely filed.

Accordingly, the Court turns to the merits of the claims at issue in this petition.

## V.   ANALYSIS

### A.   Jury Instructions

Grissom asserts that the trial court erred in giving a sequential "acquit first" jury instruction and verdict sheet which told jury to deliberate on passion/provocation manslaughter only after a finding that petitioner was not guilty of murder. He also claims that the court erred in failing to give a jury instruction on lesser included offenses for conspiracy, namely, the lesser included offense of conspiracy to commit aggravated assault. Moreover, Grissom contends that the conspiracy charge should have been eliminated altogether since the co-defendant Washington was acquitted of all charges in a separate trial.

17

Grissom asserts that these errors in jury instructions deprived him of his federal constitutional right of due process and a fair trial.  Grissom raised these claims on direct appeal and in his state PCR proceedings.

1.  *Passion/Provocation Jury Charge*

With respect to the first claim, the Appellate Division found no error by the trial court sufficient to warrant post-conviction relief.  Specifically, the Appellate Division found as follows:

> Defendant contends that the trial judge erred by charging the jury with murder before passion/provocation manslaughter.  Defendant asserts that the sequential nature of the instruction and verdict sheet directly violated State v. Coyle, 119 N.J. 194 (1990).  According to defendant, this sequence precluded the proper consideration of passion/provocation manslaughter as a lesser-included offense and a new trial is warranted.

> While the State agrees that the sequential charge given by the trial judge as to murder and passion/provocation manslaughter was given in error, no prejudice was suffered by defendant and the error was harmless.  Additionally, the State contends that the evidence presented at trial was insufficient to warrant a passion/provocation manslaughter instruction.  Indeed, defendant did not even assert passion/provocation as a defense.  Thus, there was no likelihood that the verdict was unjust.

> In charging the jury as to murder the trial judge instructed, in relevant part, as follows:

> > A person is guilty of murder if he, one, caused the victim's death or serious bodily injury that then resulted in death and, two, the defendant did so purposefully or knowingly and, three, that he did not act in heat of passion resulting from a reasonable provocation.  If you find beyond a reasonable doubt that the defendant purposefully or knowingly caused Donnie Ledbetter's death or serious bodily injury resulting in death and that he did not act in the heat

18

of passion resulting from a reasonable provocation,
then the defendant would be guilty of murder.  If,
however, you find the defendant purposely or knowingly
caused death or serious bodily injury resulting in
death and that he did act in the heat of passion
resulting from a reasonable provocation, then the
defendant would be guilty of passion provocation
manslaughter.  In order for you to find the defendant
guilty of murder the State is required to prove each of
the following elements beyond a reasonable doubt. One,
that the defendant caused Donnie Ledbetter's death or
serious bodily injury that then resulted in his death.
Two, that the defendant did so purposefully or
knowingly and three, that the defendant did not act in
the heat of passion resulting from a reasonable
provocation.  One of the elements that the State must
prove beyond a reasonable doubt is that the defendant
acted purposefully or knowingly ....
....

Another element that the [S]tate must prove beyond a
reasonable doubt is that defendant caused Donnie
Ledbetter's death or serious bodily injury that then
resulted in death. ...

The third element that the State must prove beyond a
reasonable doubt to find this defendant guilty of
murder is that the defendant did not act in the heat of
passion resulting from a reasonable provocation.
Passion provocation manslaughter is a death caused
purposefully or knowingly that's committed in the heat
of passion resulting from a reasonable provocation.
Passion provocation manslaughter has four factors which
distinguish it from murder.  In order for you to find
the defendant guilty of murder the State need only
prove the absence of any one of these factors beyond a
reasonable doubt.  The four factors are, that there was
a reasonable provocation, that provocation actually
impassioned the defendant, that the defendant did not
have a reasonable time to cool off between the
provocation and the act which caused the death and that
the defendant did not actually cool off before
committing the act which caused the death. ... If you
determine the State has proved beyond a reasonable
doubt that there was not adequate provocation or that
the provocation did not actually impassion the
defendant or that the defendant had a reasonable time
to cool off or that the defendant actually cooled off
and in addition to proving one of those four factors

19

you determine that the State has proved beyond a
reasonable doubt that the defendant purposefully or
knowingly caused the death or serious bodily injury
resulting in death, you must find the defendant guilty
of murder.  If, on the other hand, you determine that
the State has not proved at least one of the factors of
passion provocation manslaughter beyond a reasonable
doubt, but that the State has proved beyond a
reasonable doubt that the defendant purposefully or
knowingly caused the death or serious bodily injury
resulting in death, you must find the defendant guilty
of passion provocation manslaughter.

Upon the request of the jury during deliberations, the trial
judge reread a similar charge.

Generally, jury instructions are to be examined as a whole.
State v. Heslop, 135 N.J. 318, 324 (1994).  "'[P]ortions of
a charge alleged to be erroneous cannot be dealt with in
isolation but the charge should be examined as a whole to
determine its overall effect.'" Ibid. (Quoting State v.
Wilbely, 63 N.J. 420, 422 (1973)).  Furthermore, because
defendant failed to object at trial, this court must
consider whether plain error occurred.  State v. Brooks, 309
N.J. Super. 43, 61 (App. Div.), certif. denied, 156 N.J. 386
(1998).  Plain error is reversible if it is "clearly capable
of producing an unjust result." R. 2:10-2.  The question is
whether the possibility of injustice is "'sufficient to
raise a reasonable doubt as to whether the error led the
jury to a result it otherwise might not have reached.'"
State v. Brooks, supra, 309 N.J. Super. at 61 (quoting State
v. Macon, 57 N.J. 325, 336 (1971)).

The charge presented to the jury regarding murder and
passion/provocation manslaughter was proper and did not
violate State v. Coyle.  Here, the judge correctly informed
the jury that it needed to address the presence or absence
of passion/provocation when considering the charge of murder
and passion/provocation manslaughter.  Unlike State v.
Coyle, passion/provocation was included within and made a
part of the murder charge itself.  The judge did not
instruct the jury to consider passion/provocation
manslaughter only if it determined that the State failed to
prove beyond a reasonable doubt the purposeful or knowing
murder.  Instead, the judge charged the jury that in order
to find defendant guilty of murder, the State had to prove
beyond a reasonable doubt not only that defendant
purposefully or knowingly caused death or serious bodily
injury resulting in death, but also that defendant did so

without acting in the heat of passion upon reasonable provocation.  Furthermore, the judge did not direct the jury to first deliberate as to murder and then consider passion/provocation.  Therefore, although both defendant and the State agree that the charge was incorrect, the instruction was proper and did not confuse the jury as to how to deliberate as to murder and the lesser-included offenses.

As to the verdict sheet, the trial judge gave the following pertinent instruction:

> This is what the jury verdict form looks like and it has Count One conspiracy, you'll mark not guilty or guilty.  For Count two murder, not guilty or guilty and then it tells you that if you find the defendant guilty of Count two which is murder you stop.  If you find him not guilty then you consider 2A which is passion provocation manslaughter and then once again if you find him guilty you stop.  If you find him not guilty you consider aggravated manslaughter.  If you find him guilty you stop.  If you find him not guilty you then consider reckless manslaughter.

The verdict sheet read in relevant part:

> Count 1) CONSPIRACY.  (Agreeing with another person to commit a murder with the purpose of committing that crime.)
> _____ Not Guilty     _____ Guilty
>
> Count 2) MURDER.  (Purposeful or knowing killing which was <u>not</u> committed in the heat of passion resulting from a reasonable provocation.)
> _____ Not Guilty     _____ Guilty
>
> If you find the Defendant Guilty of Count 2, Stop.  If you find the Defendant Not Guilty, Consider 2a.
>
> 2a)  Lesser Offense - PASSION-PROVOCATION MANSLAUGHTER.  (Knowing or purposeful killing which was committed in the heat of passion resulting from a reasonable provocation.)
> _____ Not Guilty     _____ Guilty

In <u>State v. Reese</u>, 267 N.J. Super. 278, 289 (App. Div.), <u>certif</u>. <u>denied</u>, 134 N.J. 563 (1993), this court found that the verdict sheet presented to the jury did not require a reversal.  This court concluded that "[b]ecause the jury had

to focus on the question of purposeful or knowing conduct to consider either murder or passion/provocation manslaughter, the verdict sheet did not have to contain a sequential instruction that it had to find the absence of passion/provocation before considering murder." Id. at 288. Furthermore, the trial judge, after reviewing the verdict sheet with the jury, instructed them that the verdict form is not the jury charge. Ibid. Additionally, the judge's oral instructions as to the elements of the crimes were submitted to the jury in writing and available in the jury room during deliberations. Id. at 289. This court concluded that the judge's intent was to focus the jury's attention on the verdict sheet for the recordation of the verdict, not for the sequences of its deliberations or the elements of the offense. Id. at 287.

The facts here are even stronger than the circumstances presented in Reese. In effect, the verdict sheet encompassed the element of passion/provocation within the murder count whereas the verdict sheet in Reese did not. The sheet itself made it clear that passion/provocation had to be ruled out to find defendant guilty of murder.

Moreover, defendant did not even argue passion/provocation to the jury. Defendant claimed that he remained in the car when his friend, Kip Washington, went to the door of Ledbetter's residence in order to speak to Ledbetter. The fact that the conversation escalated into a shooting was beyond defendant's ability to control if defendant is to be believed. That was defendant's posture at trial. We fail to see how defendant could have been harmed by the verdict sheet's format. We find no error, much less plain error.

(October 7, 2002 Appellate Division Opinion at pp. 7-13, Docket entry no. 18-9).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief. Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

[t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be

judged in artificial isolation," but must be considered
in the context of the instructions as a whole and the
trial record.  In addition, in reviewing an ambiguous
instruction ..., we inquire "whether there is a
reasonable likelihood that the jury has applied the
challenged instruction in a way" that violates the
Constitution.  And we also bear in mind our previous
admonition that we "have defined the category of
infractions that violate 'fundamental fairness' very
narrowly."  "Beyond the specific guarantees enumerated
in the Bill of Rights, the Due Process Clause has
limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted); see also Smith v. Spisak, ___ U.S. ___, 130 S.Ct. 676,

684 (2010)(no right to habeas relief if Supreme Court has not

previously held jury instruction unconstitutional for same

reason).

The United States Court of Appeals for the Third Circuit has

observed that a habeas petitioner who challenges state jury

instructions must "point to a federal requirement that jury

instructions ... must include particular provisions," or

demonstrate that the jury "instructions deprived him of a defense

which federal law provided to him."  Johnson v. Rosemeyer, 117

F.3d 104, 110 (3d Cir. 1997).  This is because district courts do

not "sit as super state supreme courts for the purpose of

determining whether jury instructions were correct under state

law with respect to the elements of an offense and defenses to

it."  Id.  As the Third Circuit explained,

In considering whether this case involves a claim of error
under the Constitution, laws, or treaties of the United
States, it is critical to remember that the Supreme Court
has made it clear that the states define the elements of

23

state offenses.  Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements.  See McMillan v. Pennsylvania, 477 U.S. 79, 84-86, 106 S.Ct. 2411, 2415-16, 91 L.Ed.2d 67 (1986).

It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force.  Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law.  Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence." Cool v. United States, 409 U.S. 100, 104 (1972).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979)

(jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused); Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S. 1109 (1998)(the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law.").

"[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." Victor v. Nebraska, 511 U.S. 1, 22 (1994). As the Supreme Court explained in Victor, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury. Victor, 511 U.S. at 6 (citations and internal quotation marks omitted). "[A] misdescription of the burden of proof ... vitiates all the jury's findings. Sullivan v. Louisiana, 508 U.S. 275, 281 (1993) (emphasis in original). Such an error is considered structural and thus is not subject to harmless error review. See id. at 280-82. But see Neder v. United States, 527 U.S. 1, 8-11 (1999) (applying harmless-error analysis where jury was not instructed on an element of an offense).

25

In this case, the Appellate Division determined that the trial court's instructions to the jury were proper and did not confuse the jury as to how to deliberate the murder and lesser-included offenses.  The jury charge included passion/provocation within and as part of the murder charge.  Further, the jury charge did not instruct the jury to first deliberate as to the murder charge and then consider passion/provocation.  Rather, the jury charge correctly informed the jury to deliberate the presence or absence of passion/provocation when considering the murder charge and the lesser-included offense of passion/provocation manslaughter.

Moreover, the jury instruction was not plain error because the judge clearly instructed the jury about the State's burden of proof.  The appellate court also commented that Grissom did not even argue passion/provocation to the jury.  In short, the jury instructions did nothing "to lift the burden of proof on an essential element of an offense."  Finally, having carefully reviewed the jury charges as a whole, this Court finds that Petitioner was not deprived of a fair trial by the overall jury instructions given, and any error as asserted by Grissom in this regard was, at the very most, plainly harmless in light of the overall record.

Similarly, as to the verdict sheet, the Appellate Division did not find any harmful error under state law, and indeed, found that the verdict sheet made itself clear that passion/

provocation had to be ruled out to find Grissom guilty of murder. This Court cannot identify any error on the part of the trial court that would rise to the level of a constitutional violation. Grissom has not shown that his trial was so prejudiced by error with respect to the jury verdict sheet in this instance that the principles of fundamental fairness and due process were violated.

Thus, this Court finds no error of federal constitutional dimension with respect to the jury charge and verdict sheet. The jury instruction did not have the capacity to produce an unjust result. No "substantial and injurious effect" exists. The state court ruling on this issue is neither contrary to nor an unreasonable application of the applicable federal law, nor is the decision based upon an unreasonable determination of the facts. Accordingly, Grissom is not entitled to relief on this claim.

2. *Conspiracy Charge*

Next, Grissom argues that the trial court erred in charging the jury on conspiracy, and that, alternatively, the court should have instructed the jury on the lesser crime of conspiracy to commit aggravated assault. The State contends that there was more than sufficient evidence at trial to support a conspiracy charge. Secondly, there was no rational basis to support the lesser crime of conspiracy to commit aggravated assault because Grissom never asserted any scenario to support the lesser charge.

At trial, Grissom claimed that co-defendant Washington took it upon himself to kill Ledbetter.

Grissom raised this argument as part of his ineffective assistance of counsel claim in his state PCR proceedings. Relying on state law, the Appellate Division found there was no rational basis for the charge as it was not supported by the evidence. Moreover, the appellate court found that such a charge "was directly contrary to defendant's position at trial that he was not the shooter, it could have prejudiced his chances of being acquitted of murder, and it would have forced counsel to have forsaken or altered his trial strategy." (February 5, 2009 Appellate Division Opinion at pg. 7, Respondent's Exhibit 16, Docket entry no. 18-18).

This Court finds no plain error in failing to instruct the jury on lesser-included conspiracy offense where there was no evidence to support the claim. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). The absence of the jury instruction did not have the capacity to produce an unjust result.

Moreover, the inclusion of a conspiracy charge was supported by the evidence at trial. Having carefully reviewed the jury charges as a whole, this Court finds that Petitioner was not deprived of a fair trial by the overall jury instructions given,

and any error as asserted by Grissom in this instance was, at the very most, plainly harmless in light of the overall record.

Thus, this Court finds no error of constitutional dimension. The state court decision on these claims was neither contrary to nor an unreasonable application of the applicable federal law, nor is the decision based upon an unreasonable determination of the facts.  Accordingly, Grissom is not entitled to relief on this claim.

B.   Denial of Use of Co-Defendant's Confession at Trial

Grissom also asserts that the trial court erred in denying him access to co-defendant Washington's confession for favorable use at petitioner's trial.  Grissom alleges in his petition that one of the State's witness, Dennis Tillery, purportedly had given a statement that Washington had come to the witness's home and confessed that Grissom had a "beef" with Ledbetter and that Washington handled it himself.  Grissom alleges that at his second trial, his counsel attempted to elicit testimony from Tillery as to this alleged confession, but the trial court would not allow counsel to elicit the proposed testimony.  Grissom further argues that Tillery testified about Washington's alleged confession at Washington's separate trial.

The State first argues that this purported testimony from Tillery was inadmissible hearsay properly excluded by the trial court.  This Court reviewed the pertinent transcript referenced by the State and Grissom, namely, the October 31, 2000 trial

transcript at pages 129-143, and it is clear that the trial court would not admit certain testimony by Tillery because it was inadmissible hearsay.  Moreover, the State argues that Grissom fails to provide any factual support for his claim, either by affidavits or certifications, and thus, there was no showing of an admissible declaration against interest.

Grissom contends that he raised this claim on state court review.  A careful review of the state court record does not show that this claim was raised by Grissom on either direct appeal or in his state PCR proceedings.  Nevertheless, as stated previously, this Court may review and deny this habeas petition on the merits notwithstanding the purported failure of Grissom to fully exhaust all of his claims on state court review.  28 U.S.C. § 2254(b)(2).

The Supreme Court has held that "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."  Marshall v. Lonberger, 459 U.S. 422, 438 n. 6 (1983).  The admissibility of evidence is generally a question of state law which is not cognizable under habeas review.  See Keller v. Larkins, 251 F.3d 408, 416 n. 2 (3d Cir. 2001)("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"), cert. denied, 534 U.S. 973 (2001).  See also Estelle v. McGuire, 502 U.S. 62, 70 (1991)(holding that the state court's admission in petitioner's

trial for murdering his infant daughter of the testimony of two physicians that the child had suffered child abuse did not violate due process because the evidence was relevant to intent).

To be sure, the United States Court of Appeals for the Third Circuit has held that the admission of evidence may violate due process where the evidence "undermine[d] the fundamental fairness of the entire trial." Keller v. Larkins, 251 F.3d at 413; see also Lesko v. Owens, 881 F.2d 44, 51 (3d Cir. 1989)("the erroneous admission of evidence that is relevant, but excessively inflammatory, might rise to the level of a constitutional violation"); Bisaccia v. Attorney General, 623 F.2d 307, 313 (3d Cir. 1980)(when "the probative value of ... evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then use of such evidence by a state may rise to the posture of fundamental fairness and due process of law"), cert. denied, 449 U.S. 1042 (1980).

Here, the trial court correctly applied state evidentiary law in declining to admit testimony from Tillery that was plainly inadmissible hearsay. Grissom failed to provide any support by way of affidavit or certification for his alleged claim that Washington purportedly confessed to Tillery that Washington did the shooting. Moreover, the preclusion of unsupported and inadmissible hearsay did not violate due process or undermine the fundamental fairness of Grissom's trial, because Grissom has made no showing that the trial court's decision in precluding this

31

unsupported and inadmissible hearsay testimony by witness Tillery had "a substantial and injurious effect or influence" on the jury's verdict so as to have denied Grissom a fundamentally fair trial. Fry v. Pliler, 551 U.S. 112, 116 (2007); see also Keller v. Larkins, 251 F.3d at 413. Grissom is not entitled to habeas relief on this ground.

C.  Prosecutorial Misconduct

In Ground Three of his petition, Grissom asserts that the prosecutor engaged in misconduct by introducing the gun used in the murder as evidence at trial despite the fact that Grissom was not being tried in his second trial on the weapons offenses. Grissom contends that this offering of the gun at trial was prejudicial other crimes evidence and further violated his right against double jeopardy. Grissom also alleges that the prosecutor coerced witnesses to change their testimony and vouched for the credibility of witnesses. He also contends that the prosecutor allowed the eyewitness to give in-court identification testimony at trial after learning that the eyewitness had spoken to Grissom before trial without recognizing him as the defendant. He claims that he raised these claims in his state PCR proceedings.

At the state PCR hearing, the trial court found, as follows:

... It has been argued prosecutorial misconduct. There are three parts of it.

One is, that the prosecutor coerced his witnesses. There's no proof. No witness came forward and said, I was coerced.

32

I -- you know, Mr. Solomon told me what I had to do, he
threatened me, or anything else.  Without some proof, I have
got no reason to believe it.

The second is that Mr. Solomon vouched for the credibility
of his -- his witnesses.  Not really.  What he said is, he
found them to be credible.  That's not really vouching for
them.

And the third is that as part of the case he introduced the
gun in evidence, even though you weren't charged at -- in
the trial with possession of a weapon.  You were charged, at
the very least, as an accomplice to a murder.  He had to
prove the murder or there would be nothing for you to be an
accomplice to.  Showing the jury, putting in evidence the
weapon is a necessary element, if he's got it, to prove
murder.  If he didn't prove the murder, there would be
nothing for him to allege you were an accomplice to, because
first they have got to decide that there was a murder in
order for you to be able to be an accomplice.  So nothing
wrong there.

(May 23, 2007 PCR Hearing Transcript, 15:23-16:22, Docket entry
no. 18-31).

    While the Appellate Division did not expressly address
Grissom's claim of prosecutorial misconduct, the court did find
that:

    ... defendant's contention that the murder weapon should not
    have been admitted because his retrial did not involve the
    weapon possession charges lacks merit.  The murder weapon
    was relevant to proving the murder.  Furthermore, the weapon
    was admitted for the limited purpose to prove motive, and
    the judge gave the jury a limiting instruction.

(February 5, 2009 Appellate Division Opinion at pg. 8, Docket
entry no. 18-18).

    Habeas review of a claim based on prosecutorial misconduct
is limited to determining whether the conduct "so infected the
trial with unfairness as to make the resulting conviction a

33

denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974). "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982). If it does not infect the entire trial, misconduct alone is not enough to warrant a new trial. <u>Id</u>. at 220. "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments [or conduct] standing alone, for the statements or conduct must be viewed in context." <u>United States v. Young</u>, 470 U.S. 1, 11 (1985).

However, the U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ... Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

<u>Berger v. United States</u>, 295 U.S. 78, 88 (1935).

"Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of

evidence against the defendant." <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001).

When a prosecutor's opening or closing remarks are challenged in a habeas petition, again, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly</u>, 416 U.S. at 643).  In determining the likely effect of improper comments, a court may consider whether the comments were responsive to or invited by prior comments made by opposing counsel.  <u>Darden</u>, 477 U.S. at 181-82.  "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001).

Based on a careful review of the entire trial record, this Court finds that the prosecutor's conduct during trial did not have the capacity to so infect the trial with unfairness as to make the resulting conviction a denial of due process.  Grissom made absolutely no showing to support his claim that the prosecutor coerced witnesses, and the trial court record shows no vouching by the prosecutor for the witnesses' testimony that would rise to the level of a constitutional violation.

35

Therefore, the Court finds no error of constitutional dimension with respect to Grissom's claim of prosecutorial misconduct.  The state court rulings were not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts presented in the state court proceedings.  Accordingly, this ground for habeas relief will be denied.

D.   <u>Ineffective Assistance of Counsel</u>

Finally, Grissom asserts various claims that his trial and appellate counsel were ineffective, in violation of the Sixth Amendment.  In particular, Grissom argues that his trial counsel was ineffective in failing to object to a sequential jury charge and verdict sheet on murder and passion/provocation manslaughter. He also alleges that his trial counsel failed to object to the jury charge on conspiracy to commit murder, and that he failed to ask for a jury instruction on the lesser included crime of conspiracy to commit aggravated assault.  Grissom further claims that his trial counsel was ineffective because he did not object to the admission of the handgun into evidence and Grissom's testimony about it; he did not investigate and argue a defense of mental defect or severe emotional distress; and he did not advise the trial court of Grissom's decision to accept a plea offer. Grissom also asserts that his appellate counsel was ineffective because he failed to raise Grissom's claims of prosecutorial misconduct, and trial court error in failing to admit the

confession testimony, and the failure to charge the jury on the lesser included offense of conspiracy to commit aggravated assault.  Grissom raised these claims of ineffective assistance of counsel in his state PCR proceedings.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  To meet this first prong of deficient performance, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  Id.

If able to demonstrate deficient performance by counsel, then the petitioner must show prejudice, i.e., there is a "reasonable probability that but for counsel's unprofessional

errors, the result of the proceeding would have been different." Id. at 694.   As the Strickland Court explained, "[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial."  Id. at 693.   Thus, the Court held that prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.   The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. See id. at 695-96.   Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.   See id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.   However, the Supreme Court further instructed that a district court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.   "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."   Id.

As stated above, Grissom raised his claims of ineffective assistance of counsel in his state PCR proceedings.  The state PCR court rejected Grissom's claims on the merits, as follows:

38

... I'm not going to read the whole accomplice liability charge, but in part it says, it's starting with line 19. "Our law recognizes that two or more persons may participate in the commission of an offense, but each may participate therein with a different state of mind. The liability or responsibility of each participant of any ensuing offense is dependant upon his own state of mind and not anyone else's." So, we did deal with the intent of -- different intents of different people.

The third point was that Mr. Adetula didn't do an adequate investigation. That he should have talked to certain witnesses who could have corroborated the defendant's version. There is no affidavit from any witness. There is no indication of who they were, where they were located, whether or not they were available, what they would have said. There's no indication that all of this information or any of this information was given to Mr. Adetula. What we have is a conclusion that it would have made a difference, but no factual basis upon which I could rule.

It's also argued that Mr. Adetula failed to request a Hampton charge. It's true that he didn't request it, but he didn't request it because at the charge conference I indicated I was gonna give him the Hampton charge, and I did. And that is also in the transcript starting at page 120 and 121 talking about, "There is for your consideration a witness statement in the form of a note left on a windshield and all statements allegedly made by defendants," and then I go through the whole thing about how you have to be -- look at it closely. How you have to give a special scrutiny to it. The whole idea of State v. Hampton and the Hampton charge was given as part of this case.

. . .

It's also argued that Mr. Adetula failed to request an identity charge, identification charge. And failed to argue about the inconsistencies. Once again, looking at the transcript, page 125 is the beginning of the identity charge, which talks about the burden of proving the iden -- identity of the person who committed the crime was upon mistake, and then it explains the whole thing about how to deal with different testimony, and in this part we do talk about at least the testimony of Ms. Bailey (phonetic), because she was the State's major identity witness, and it talks about inconsistencies and how to deal with inconsistencies, so it was all covered.

39

The next point is that Mr. Adeluta failed to object to other crime evidence. Once again, how other crime evidence could be used was in fact charged to the jury. I found that it was admissible for a limited purpose, and it was, and I explained to the jury, once again, on page 121, "Normally such evidence is not permitted under our rules of evidence. Our rules specifically exclude evidence that a defendant has committed certain wrongs or acts when they're not offered to show that he ha -- when they're not offered to show that he had a disposition or tendency to do wrong, and therefore must be guilty of the charge."

It goes on to explain, you can't find somebody guilty because they did other crime evidence or other wrong evidence, that it -- it has got limited purpose, and in this case I believe it was to show motive. It has been argued prosecutorial misconduct. There are three parts of it.

One is, that the prosecutor coerced his witnesses. There's no proof. No witness came forward and said, I was coerced.

. . .

And the third part is that as part of the case he introduced the gun in evidence, even though you weren't charged at -- in the trial with possession of a weapon. You were charged, at the very least, as an accomplice to a murder. He had to prove the murder or there would be nothing for you to be an accomplice to. Showing the jury, putting in evidence the weapon is a necessary element, if he's got it, to prove murder. If he didn't prove the murder, there would be nothing for him to allege you were an accomplice to, because first they have got to decide that there was a murder in order for you to be able to be an accomplice. So, nothing wrong there.

You argued that -- that Appellate counsel was ineffective because he didn't bring all these points. He didn't bring all the points because they didn't have any validity to them. There was some validity to what Mr. Solomon says, okay? These points could have been raised on direct appeal. To simply couch them in terms of it's ineffective assistance of counsel is getting a second bite of the apple. Post conviction relief rules say, or a Court would say, that if there -- something that could have been raised on direct appeal and you didn't raise them, then you're barred from raising them. You don't get to raise them by simply saying, well, this is really what I'm saying, but my lawyer didn't raise it, so he's ineffective.

I must make one last observation.  I had Mr. Adetula try a
lot of cases before me in the 10 years that I was in
criminal.  Mr. Adetula, in this trial, as he did in every
trial, []mounted a spirited defense.  I have never been able
to come to the conclusion that Mr. Adetula doesn't fight
hard for his clients.  He fights as hard as any attorney.
He aggressively and skillfully tried his case.  A defense, a
turn key, guaranteed results.  All a defense attorney can
guarantee is effort and a level of skill, and in this case
he gave the effort.  He had a level of -- level of skill.
He certainly did not fall below the level contemplated by
Strickland v. Washington, which would have made his
assistance ineffective.

And, therefore, based on all of the foregoing, I'm denying
the motion for post-conviction relief.

(May 23, 2007 PCR Transcript at 12:3-18:2, Docket entry no. 18-

31).

    Grissom appealed from denial of his state PCR petition.  The

Appellate Division ruled as follows:

    Defendant contends that trial counsel: (1) was ineffective
    during a plea deal; (2) failed to conduct an adequate
    investigation and to call essential witnesses to trial; (3)
    failed to request a lesser-included offense charge of
    conspiracy to commit aggravated assault; (4) failed to
    object to the admission of other crimes evidence (the murder
    weapon); (5) failed to argue in favor of passion/provocation
    manslaughter; and (6) failed to make remedial action when
    defendant advised him that alternate jurors had allegedly
    overheard defendant discussing the case with his mother.[8]

    ----

    [8]   We decline to address defendant's claim of
        prosecutorial misconduct.  Defendant did not raise this
        claim in either of his direct appeals.  He is barred
        from doing so here.  State v. Mitchell, 126 N.J. 565,
        583-84 (1992)(quoting State v. Cerbo, 78 N.J. 595, 605
        (1979)); R. 3:22-4.  We also decline to address
        defendant's contentions, not raised below, that trial
        counsel failed to investigate or develop a diminished
        capacity defense.  Nieder v. Royal Indem. Ins. Co., 62
        N.J. 229, 234 (1973)(quoting Reynolds Offest Co., Inc.
        v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959),
        certif. denied, 31 N.J. 554 (1960)); see also State v.

Defendant offers nothing more than his bald allegations of
trial counsel's deficiency.  He presents no affidavits or
certifications supporting any of his claims.  Cummings,
supra, 321 N.J. Super. at 170 (citing R. 1:6-6).  He
presents no evidence, supported by affidavits, that the
State offered a plea deal or that he accepted it, or that he
raised the juror issue with trial counsel.  Defendant fails
to assert facts showing what an investigation would have
revealed, and he fails to identify any alleged witnesses or
what evidence they would have provided at trial.

Defendant also fails to show that trial counsel was
ineffective for failing to request a lesser-included
conspiracy to commit aggravated assault charge.  There was
no rational basis for that charge as it was not supported by
the evidence.  State v. Savage, 172 N.J. 374, 396-97 (2002);
State v. Garretson, 313 N.J. Super. 348, 353 (App. Div.
1998)(citing State v. Brent, 137 N.J. 107, 114 (1994));
N.J.S.A. 2C:1-8e.  Further, such a charge was directly
contrary to defendant's position at trial that he was not
the shooter, it could have prejudiced his chances of being
acquitted of murder, and it would have forced counsel to
have forsaken or altered his trial strategy.  State v.
Perry, 124 N.J. 128, 162-63; see also State v. Vasquez, 265
N.J. Super. 528, 549 (App. Div.), certif. denied, 134 N.J.
480 (1993).

Likewise, passion/provocation, which defendant did not
present at trial, directly contradicted his defense.
Nevertheless, the judge gave a passion/provocation
instruction as a lesser-included offense.  We found that
charge proper.  State v. Grissom, No. A-4875-00T4 (App. Div.
October 7, 2002)(slip op. at 10).

And finally, defendant's contention that the murder weapon
should not have been admitted because his retrial did not
involve the weapon possession charges lacks merit.  The
murder weapon was relevant to proving murder.  Furthermore,
the weapon was admitted for the limited motive to prove
motive, and the judge gave the jury a limiting instruction.

Based upon our careful review of the record, we discern no
reason to disturb the judge's ruling.  Defendant failed to
establish a prima facie case of trial counsel deficiency.
Accordingly, there was no ineffective assistance of
appellate counsel.

---

Arthur, 184 N.J. 307, 327 (2005).

42

(February 5, 2009 Appellate Division Opinion at pp. 5-8).

This Court has carefully reviewed the state court record and finds no error in the state court rulings. Grissom has failed to provide any factual support for his claim that his trial counsel was deficient and failed to investigate in preparation for trial. As stated previously in this Opinion, there was no error in the jury charge and verdict sheet submitted and there was a passion/provocation manslaughter jury charge. Consequently, there was no deficiency in trial counsel's performance, nor was there prejudicial effect. Again, as set forth previously in this Opinion, as to the lack of a jury charge on the lesser-included offense of conspiracy to commit aggravated assault, there was no factual or legal basis to request the charge and such a charge was not supported by the evidence. Therefore, trial counsel could not be deemed deficient for failing to request such a jury instruction.

With regard to the handgun evidence at retrial, Grissom's argument of double jeopardy is misguided. Grissom was not being retried for the weapons offenses. He was being retried for the murder and conspiracy charges and the introduction of handgun as the murder weapon was relevant to proving murder. Moreover, collateral estoppel is only triggered when a defendant has been acquitted of the charges. Here, Grissom was convicted on the weapons offenses. There was no verdict in the first trial with regard to the weapon that would have negated the elements of the

43

offenses for which Grissom was being retried.  More significantly, the weapon was introduced to prove motive and the jury was given a limiting instruction.  Therefore, there was no basis for trial counsel to object to the admission of the handgun for the limited purpose for which it was used, and a curative instruction was given.  Therefore, trial counsel's performance in this regard was not deficient nor did it result in prejudice.

Next, as to the claim that counsel was deficient because he failed to present a diminished capacity or mental defect defense, such a claim is completely lacking in merit.  There was no evidence by Grissom to show that he had a mental defect that would have affected his mental capacity to form the requisite criminal intent to prove murder and conspiracy.  At most, the evidence at trial showed that Grissom was depressed from the recent deaths of his father and stepfather, as well as the break-up with his girlfriend.  He provided no evidence that this depressive state did in fact impair his cognitive faculties so as to prevent him from acting with the requisite intent to commit murder.  Moreover, this defense would have undermined the defense strategy that Grissom was not the shooter.

Finally, there was no evidence offered by Grissom to show that his counsel ignored a plea offer.  Therefore, this Court concludes that the determination of the state PCR court and appellate court in finding no constitutionally ineffectiveness of counsel, resulted in a decision that was neither contrary to, nor

involved an unreasonable application of clearly established federal law under Strickland, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Williams v. Taylor, supra. Grissom has failed to demonstrate that the state court opinions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. Matteo, 171 F.3d at 891. Therefore, the Court will deny federal habeas relief on the ineffective assistance of counsel claims because they are substantively meritless.

E.   Cumulative Error

Finally, Grissom argues that the cumulative effect of all of the alleged errors deprived him of a fair trial. The test for a "cumulative error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process." See Hein v. Sullivan, 601 F.3d 897, 917 (9th Cir. 2010)(relying on Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); Thornburg v. Mullin, 422 F.3d 1113, 1137 (10th Cir. 2005)(relying on Donnelly); see also Fahy v. Horn, 516 F.3d 169, 205 (3d Cir. 2008)("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice'").

45

Petitioner raised his cumulative error claim in his state PCR proceedings.  Because the PCR court found no merit to any of Grissom's claims for post-conviction relief, there is likewise no basis or merit for habeas relief based upon an alleged accumulation of errors which did not exist.

Grissom does not make any assertions suggesting actual prejudice, and this Court, after carefully examining the state court record, cannot find any aspect of Grissom's criminal proceedings suggesting, singularly or cumulatively, anything more than a hypothetical possibility of prejudice.  Correspondingly, this claim does not merit habeas relief, since the state court's dismissal of Grissom's cumulative error argument was not an unreasonable application of Supreme Court precedent.

VI.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue.  An appropriate Order follows.

_____
CLAIRE C. CECCHI
United States District Judge

DATED: June 5, 2012

47